**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| **CITY OF BANGOR, MAINE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 02-183-B-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITIZENS COMMUNICATIONS COMPANY,** | ) | |
| | ) | |
| **Defendant & Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BARRETT PAVING MATERIALS, INC., *et al.*,** | ) | |
| | ) | |
| **Third-Party Defendants.** | | |

**CITIZENS COMMUNICATIONS COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7 and 56, Citizens Communications Company (Citizens) respectfully submits this motion for summary judgment with respect to Counts I and II of the City of Bangor, Maine (the City)'s Second Amended Complaint.

## INTRODUCTION

This case is about whom should bear responsibility for tar-like contamination underlying a section of the Penobscot River in Bangor, Maine. The most noteworthy feature of this site is that it is part of a public waterway on which there have been pollution-causing activities for over 150 years. Because environmental controls were practically non-existent before the 1970s, the

Penobscot River long served as a public sewer into which vessels, industrial plants, and government agencies routinely discharged all manner of untreated wastes.[1]

The section of the Penobscot River at issue is known as Dunnett's Cove. Surface sheens from tarry material in Dunnett's Cove were reported in newspapers as early as July, 1965.[2] Investigations by the City of Bangor and the Maine Department of Environmental Protection determined that the contamination resulted from discharges of pollutants from numerous sources, but excluded as a contributor the separate site occupied by Bangor Gas Works, which is not contiguous to the Cove and is almost 1,000 feet away, on the opposite side of Main Street.[3]

No legal action was initiated for almost 40 years, until this action was filed by the City of Bangor in November 2002.[4] This 2002 action was brought solely against Citizens, which had

---

1 As the local newspaper put it in 1967, "[f]or better than a century the City of Bangor has been treating the Kenduskeag Stream and Penobscot River like open sewers." John Day, *Treatment of Stream, River As Open Sewers Is Termed A Great Tragedy*, Bangor Daily News, July 1, 1967 (attached hereto as Exhibit (Exh.) 1). Today, even after the City has made significant changes to the sewer system, there are still 12 locations where untreated waste is discharged to the Penobscot River under extreme high water flow conditions. Deposition of Expert Witness James Ring at 36-37 (attached hereto as Exhibit 2).

Bangor City government was notorious for the practice of dumping wastes into its waterways. When the Saturday Evening Post profiled the City in 1951, it wrote: "the only really exuberant Bronx cheers the city government gets are directed at the long line of city fathers who have failed to redeem Kenduskeag Stream, which flows through the center of the city proper, from its status as an open sewer." George Sessions Perry, *Bangor, Maine*, The Saturday Evening Post, Mar. 10, 1951 at 89 (attached hereto as Exhibit 3). Kenduskeag Stream flows into the Penobscot River just upstream from the Dunnett's Cove site at issue in this matter.

2 See *Oil Residue in Penobscot Under Probe*, Bangor Daily News, July 31, 1965 (attached hereto as Exhibit 4).

3 See *id*. (Exh. 4); *Gasworks, river oil apparently unrelated*, Bangor Daily News, September 12, 1980 (attached hereto as Exhibit 5).

4 The State's environmental laws are administered by the Maine Department of Environmental Protection. See 38 M.R.S.A. § 341-A, *et seq*. The City, which has no comparable legal

(cont'd)

acquired Bangor Gas Company in 1948 and owned and operated the Gas Works site for only 15 years before selling it to Maine Utility Gas Company in 1963, two years before the earliest published reports of surface sheens in Dunnett's Cove.[5] In its Second Amended Complaint, the City contends, among other things, that contamination in Dunnett's Cove originated from the Gas Works site, that contaminants were discharged during a 112-year period between 1851 and 1963, and that contaminants were conveyed to the River through a portion of the City sewer system known variously as the "Old Stone Sewer" or the "Davis Brook sewer."

In light of evidence that the City and other entities have contributed to contamination in Dunnett's Cove over the past 150 years, Citizens filed counterclaims against the City and third-party claims against 12 third-party defendants. Some of those third-party defendants have filed cross-claims against the City. The City, however, continues to proceed solely against Citizens.

The City's peculiar strategy of proceeding against Citizens alone is based on a politically expedient but legally untenable theory that Citizens can be held jointly liable for all contamination in Dunnett's Cove, no matter how little Citizens may have contributed. Counts I and II of the City's Second Amended Complaint assert that Citizens has joint liability under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). In Counts III and IV, however, the City pleads "in the alternative," asserting contribution claims under CERCLA § 113, "[i]n the event the Court should rule that the City is

(… cont'd)

mandate, has proprietary interests as an adjoining landowner and developer, and brings this action in the same capacity as any private property owner. See Second Am. Compl. ¶ 25.

[5] In 1978, the City of Bangor itself purchased the Gas Works site from Maine Utility Gas Company. The City then owned and operated the Gas Works site for 17 years before selling it to a developer in 1995. See Second Am. Compl. ¶¶ 23, 26. The City has recently confirmed that it seeks no relief in this matter concerning the Gas Works site previously owned by, among others, itself and Citizens. See Stipulation filed by City of Bangor on Oct. 2, 2003 (Docket No. 158).

not entitled to maintain an action under § 107 of CERCLA." The City has rightly anticipated a meritorious challenge to its joint liability claims.

As explained below, it is well-established in the case law of this Circuit and elsewhere that (1) a party who is potentially responsible under § 107(a) of CERCLA cannot assert a joint liability claim, but instead must rely on a contribution claim, and (2) a party, such as the City, who has been or is an owner or operator of any portion of a CERCLA "facility" is itself a potentially responsible party under § 107(a) of CERCLA, and thus cannot bring joint liability claims.

Although many dispositive motions in this matter will necessarily await further discovery, this motion can and should be resolved with dispatch.[6] Pursuant to its CERCLA contribution claims, the City can recover from Citizens only what it establishes is Citizens' own equitable share of cleanup costs. Accordingly it is the City's burden, as well as its opportunity, to bring contribution claims against any other responsible parties and to establish those parties' equitable shares of cleanup costs. The longer the City's legally defective joint liability claims remain in the case, the more likely it becomes that Citizens could be forced to conduct needless discovery against the various third-party defendants, and ultimately that the City will be left without recourse against potentially responsible parties the City has inexplicably failed to name. These results can be avoided by, among other things, the prompt granting of this motion for partial summary judgment.

---

[6] Several months ago Citizens notified the Court and all parties of its intention to file this motion, but in light of the City's announced intention of filing an amended complaint, deferred presenting the motion until after the filing of the City's Second Amended Complaint. The Court granted the City's motion to file its Second Amended Complaint on October 20, 2003. The City filed its Second Amended Complaint two days later, on October 22.

## ARGUMENT

Citizens' motion should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine for summary judgment purposes "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the potential to affect the outcome of the suit under applicable law. *Nereida-Gonzalez* v. *Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). The Court should view the facts in the light most favorable to the non-moving party. *Navarro* v. *Pfizer Corp.*, 261 F.3d 90, 94 (1st Cir. 2001).

### I. CERCLA DOES NOT ALLOW POTENTIALLY RESPONSIBLE PARTIES TO BRING JOINT LIABILITY CLAIMS.

CERCLA establishes four categories of persons who are potentially responsible for cleanup costs: (1) the current owner or operator of a facility; (2) the owner or operator of a facility at a time when hazardous substances were disposed of there; (3) any person who arranged for the disposal of hazardous substances at a facility; and (4) any person who transported hazardous substances to a facility. 42 U.S.C. § 9607(a)(1)-(4).[7] A party falling into any one of these categories — often called a potentially responsible party (PRP) — can be held strictly liable for the costs of cleanup. See *St. Paul Fire and Marine Ins. Co.* v. *Warwick Dyeing Corp.*, 26 F.3d 1195, 1197-98 (1st Cir. 1994); *Dedham Water Co.* v. *Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150-51 (1st Cir. 1989). Accordingly, persons may qualify as PRPs under

[7] CERCLA is codified at 42 U.S.C. § 9601, *et seq.* The individual sections of CERCLA, however, are often referred to by their numbering in the act itself, rather than in the U.S. Code. Thus, § 107 of CERCLA corresponds to § 9607 in 42 U.S.C., § 113 in CERCLA is 42 U.S.C. § 9613, and so on.

CERCLA solely because of their status as "owner or operator" of a facility, whether or not they were actively involved in releasing hazardous substances.

When Congress amended CERCLA in 1986, it made explicit what many courts already had found implicit: CERCLA contemplates two distinct legal actions by which plaintiffs can recover some or all of the costs associated with cleanups. *United Technologies Corp.* v. *Browning-Ferris Indus., Inc.*, 33 F.3d 96, 98 (1st Cir. 1994) (citations omitted). The first, a joint liability action under § 107 of CERCLA, allows a plaintiff to recover 100 percent of cleanup costs from any PRP. See *id*. at 100. By contrast, the 1986 addition of § 113 confirmed that PRPs themselves could file contribution actions seeking recovery of only a defendant's equitable share of the liability.[8] See *id*. at 100-01.

The First Circuit has made clear that joint liability and contribution claims are "distinct, non-overlapping anodynes." *Id*. at 103 (emphasis added). As such, "a claim by one PRP against another PRP ***necessarily*** is for contribution." *Pinal Creek Group* v. *Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir. 1997) (emphasis added); see *United Technologies*, 33 F.3d at 100-01. "CERCLA," in other words, "simply does not provide PRPs who incur cleanup costs with a claim for the joint and several recovery of those costs from other PRPs." *Pinal Creek*, 118 F.3d at 1301. Indeed, all eleven courts of appeals that have considered this issue agree that CERCLA's statutory scheme does not permit a PRP to file a joint liability claim. See *Dico, Inc.* v. *Amoco Oil Co.*, 340 F.3d 525, 530 (8th Cir. 2003) (citing and agreeing with cases from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh Circuits).

---

[8] Joint liability claims are often denominated § 107 claims, while contribution claims are often called § 113 claims. This shorthand is somewhat imprecise. It is more accurate to say that "while § 107 create[s] the right of contribution, the 'machinery' of § 113 governs and regulates such actions * * *." *Pinal Creek Group* v. *Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997). In this sense, § 107 is the ground for both joint liability and contribution actions. See *id*. at 1301-02.

## II. THE CITY'S STATUS AS AN OWNER OR OPERATOR OF THE FACILITY AT ISSUE MAKES IT A POTENTIALLY RESPONSIBLE PARTY AND THUS REQUIRES DISMISSAL OF ITS JOINT LIABILITY CLAIMS.

In Counts I and II of its Second Amended Complaint, which it captions "Claims under CERCLA § 107," the City seeks to establish that Citizens is jointly liable for the cost of cleanup. Counts III and IV, "Claims in the Alternative under CERCLA § 113," ask for a contribution remedy. Because the City, for multiple independent reasons, qualifies as a PRP in this case, its § 107 joint liability claims in Counts I and II must be dismissed.

### A. The Facility Placed At Issue By The City's Complaint Includes The Penobscot River, The Alleged Gas Works Source, And The Sewer That Allegedly Connects Those Locations.

The City asserts that the alleged "tar slick" in the Penobscot River is a "facility" under CERCLA. See, *e.g.*, Second Am. Compl. ¶ 32. In addition, the City charges that the hazardous substances at issue were produced at the Gas Works and traveled from that location to the Penobscot River by way of "a stone sewer * * * running beneath the [Gas Works] and discharging into the Penobscot River." Second Am. Compl. ¶ 21.

CERCLA defines a "facility" as "any building, structure, installation, equipment, pipe, or pipeline * * * where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located * * *." 42 U.S.C. § 9601(9). "Facility," therefore, "includes every conceivable place where hazardous substances come to be located." *Dedham Water*, 889 F.2d at 1151 (citing *United States* v. *Conservation Chemical Co.*, 619 F. Supp. 162, 184-85 (W.D. Mo. 1985)). While the City's Second Amended Complaint purports to characterize only the Penobscot River as a facility, based on the City's allegations that the Gas Works was the source and the Old Stone Sewer the conduit — *i.e.* where the City claims hazardous substances have

been "deposited," "disposed of" or "placed" (see Second Am. Compl. ¶¶ 17-20, 21) — those areas also constitute parts of the "facility" in question.[9]

**B. The City Currently Owns And/Or Operates Portions Of The Facility At Issue In This Case.**

As discussed above, the current owner or operator of a facility qualifies as a PRP under CERCLA § 107(a)(1). In addition, the owner of a facility at a time when hazardous substances were disposed of is a PRP under § 107(a)(2). The City's admissions and allegations establish that it currently owns or operates two different portions of the "facility" allegedly at issue here. The City also owned the Gas Works during a time when releases allegedly continued there. Accordingly, the City's status as a PRP may rest on any one of three independent bases.

**1. The City Owns Allegedly Contaminated Property at the River.**

The City currently owns nearly all of the property along the portion of the Penobscot River in which it claims a "tar slick" exists, including land that the City claims is contaminated with hazardous substances. The City admitted as much in a notice letter attached to its Amended Complaint, which states that the City "intends to bring suit under the Solid Waste Disposal Act to compel investigation and abatement of solid waste ***currently present*** in the Penobscot River and ***on the City's adjoining waterfront property***." Letter from Norman S. Heitmann, III, City Solicitor, to L. Russell Mitten II, Citizens Vice-President and General Counsel, *et al.* 1 (Nov. 20, 2002) (attached to the City's Second Amended Complaint) (emphasis added) (attached hereto as Exhibit 6). This assertion alone makes the City a PRP as a current owner or operator of a facility. See 42 U.S.C. § 9607(a)(1).

[9] Citizens strongly disputes the City's allegations about how contamination came to be located in the Penobscot River, but for purposes of this motion the City's allegations are assumed to be true.

Furthermore, Maine law provides that the property lines along the tidal Penobscot River extend to the mean low water mark. See *Bell* v. *Town of Wells*, 510 A.2d 509, 515 (Me. 1986); Citizens' Statement of Undisputed Material Fact in Support of Its Motion for Partial Summary Judgment (Citizens Statement) ¶ 2. Accordingly, as owner of the upland property (see Citizens Statement ¶ 1), the City also owns the sandbar beneath the Old Stone Sewer outfall that is exposed twice daily during low tide (see Citizens Statement ¶ 3). It was here that the City's consultants reported seeing "a sun-warmed patch of tar on the beach" and collected a sediment sample that they believed "consist[ed] almost entirely of tarry material with embedded sand and gravel."[10] RMT, Inc., Penobscot River/Bangor Gas Works Investigation (1999) at 13 (Deposition of Eugene McLinn, Ex. 6) (attached hereto as Exhibit 7). The City's surveying expert has since confirmed that the City owns property within the so-called "coal tar plume" in the Penobscot River. See Deposition of Richard Day at 95 & Ex. 53 (attached hereto as Exhibits 9 & 10); Citizens Statement ¶ 4. The City is therefore the current owner of a facility and a PRP under CERCLA § 107(a)(1). See 42 U.S.C. § 9607(a)(1); see also *United States* v. *Rohm & Haas Co.*, 2 F.3d 1265, 1279 (3d Cir. 1993) ("A current owner of a facility may be liable under § 107 without regard to whether it is the sole owner or one of several owners.").

**2. The City Operates the Sewers Alleged to Have Been the Conduit for Movement of Contamination to the River.**

The City alleges only one pathway from the Gas Works to the Penobscot: a sewer line running between the plant and the river. Second Am. Compl. ¶ 21; see Deposition of Eugene

---

[10] The City's consultants described the underlying sediment on this piece of City property as "black and coated with tar." RMT, Inc., Penobscot River/Bangor Gas Works Investigation (1999) at 13 (Deposition of Eugene McLinn, Ex. 6) (Exh. 7). The City has furthermore admitted that it "owns and operates public docks" — which it refers to as the "Marina Property" — "in the immediate outfall vicinity of the Old Stone Sewer" (City's Resp. to Interrog. 20 (attached hereto as Exhibit 8); Second Am. Compl. ¶ 25) that are allegedly coated with tar when "tar globules from the tar slick bubble to the surface" (Second Am. Compl. ¶ 22).

McLinn at 86-90 (attached hereto as Exhibit 11). The City does not claim that Citizens owned or operated this sewer, and for good reason. The "Old Stone Sewer" or "Davis Brook sewer" actually "functioned as part of the overall system" of sewers operated by the City. Deposition of Expert Witness James Ring (Ring Expert Dep.) at 135 (attached hereto as Exhibit 12); see Citizens Statement ¶ 5, 6. Moreover, Bangor City Council records show that in 1860, the City constructed the common sewer connecting the Gas Works property to the river. See Citizens Statement ¶ 8. Thus at all times relevant to the City's Complaint, the City operated the sole alleged conduit between the Gas Works and the Penobscot River, which for purposes of this motion must be considered a part of the relevant CERCLA facility.[11]

As a matter of fact, from the mid-1800s until the 1960s, "the Bangor sewer system utilized many local brooks and drainage ways to transport both wastewater and stormwater to either the Kenduskeag Stream or the Penobscot River." See *Downtown Bangor sewer work involved intricately detailed project*, Bangor Daily News, Feb. 17, 1996 (an article to which the City of Bangor Engineering Department contributed) (attached hereto as Exhibit 21). Even after the City enclosed these streams in pipes, they "for a long time * * * continued to discharge directly into both the Kenduskeag Stream or the Penobscot." *Id*.; see Ring Expert Dep. at 40-43 (attached hereto as Exhibit 22). The sewer from the Gas Works to the river was accordingly not an isolated case, but rather part of the City's standard practice of emptying its wastewater sewage

[11] When the City authorized the initial construction of the Gas Works in 1852, it required the plant's original owners build a sewer that would carry the plant's waste to the Penobscot River. Ring Expert Dep. Ex. 4 (attached hereto as Exhibit 13). The City's sewer expert, comparing the 1852 City Council records (*id*.) with the 1860 City Council records (Ring Expert Dep. Ex. 9, 10, 11, 12 (attached hereto as Exhibits 14, 15, 16, 17)), concluded that the drain described in the 1852 records "had not been constructed." *Id*. at 126-27 (attached hereto as Exhibit 18). But regardless of who built the sewer, it is undisputed that that the City of Bangor has operated it. *Id*. at 52 (attached hereto as Exhibit 19), 135 (Exh. 12), 139 (attached hereto as Exhibit 20).

into the Penobscot River. See Citizens Statement ¶ 9. There can be no doubt that these activities qualify the City as an "operator" PRP in this case.[12]

### 3. The City Was the Owner and Operator of the Gas Works While There Were Alleged Releases There.

When the City purchased the Gas Works property in 1978, it also became responsible as a "person who ***at the time of disposal*** of any hazardous substance owned or operated" a facility. 42 U.S.C. § 9607(a)(2) (emphasis added). The City contends that "continuing spread and migration of Hazardous Substances" was occurring on the Gas Works property when the City purchased it. City's Resp. to Interrog. No. 6 (attached hereto as Exhibit 24). This spread was apparently caused by leaks in and spills from a storage tank found on the property, which Maine Utility Gas Company left at the site. See Letter from Stanley C. Moses, Asst. Community Development Director, to Jack Krueger, Chemical Advisor, Department of Environmental Protection 2 (June 13, 1980) (attached hereto as Exhibit 25). Any such "leaking" and "spilling" constituted "disposal" within the meaning of CERCLA. See 42 U.S.C. § 6903(3); 42 U.S.C. § 9601(29). Indeed, disposal includes all such "reposing of hazardous waste and its subsequent movement through the environment." *Nurad, Inc.* v. *William E. Hooper & Sons Co.*, 966 F.2d

[12] These facts are also sufficient to give the City PRP status as an "arranger" under CERCLA § 107(a)(3). In that connection, the City in 1852 issued a "directive ***ordering*** [the original owners of the Gas Works] not only to construct but also to maintain and use" a sewer that emptied into the Penobscot River. Ring Expert Dep. at 56-57 (emphasis added) (attached hereto as Exhibit 23); see Ring Expert Dep. Ex. 4 (Exh. 13). "[I]t is clear that a municipality may be liable as a potentially responsible party if it arranges for the disposal of hazardous substances." *B.F. Goodrich Co.* v. *Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992). As one court explained, "it may seem unfair to eliminate the City's joint and several liability remedy given its laudable and public-spirited actions in undertaking the cleanup, [but] the perceived unfairness may be remedied in the apportionment and contribution phase of this lawsuit." *City of Wichita* v. *Aero Holdings, Inc.*, 177 F. Supp. 2d 1153, 1173 (D. Kan. 2000); see also *B.F. Goodrich*, 958 F.2d at 1206 (holding that because potentially responsible municipalities may maintain an action for contribution, they "are not without recourse to avoid inequitable and disproportionate burdens that may arise from their liability as third-party contributors").

837, 845 (4th Cir. 1992). As the owner from 1978 to 1995 of the property alleged to be the source of the "tar slick" in the river, the City again must be deemed a potentially responsible party. See *id*. at 846; see also *Carson Harbor Village, Ltd.* v. *Unocal Corp.*, 270 F.3d 863, 874-880 (9th Cir. 2001) (en banc) (reviewing cases and concluding that passive leaking from a vessel could constitute disposal).

**CONCLUSION**

The City is a Potentially Responsible Party under CERCLA, and as such cannot assert joint liability claims under § 107 of CERCLA. Citizens accordingly moves for summary judgment with respect to Counts I and II of the City's Second Amended Complaint.

Dated: October 24, 2003.

Respectfully submitted,

*/s/ Martha C. Gaythwaite*
Martha C. Gaythwaite
MGaythwaite@FGWL-Law.com
Bruce W. Hepler
BHepler@FGWL-Law.com
Attorneys for Defendant,
Citizen's Communications Company

FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center, P.O. Box 4726
Portland, ME 04112-4726
(207) 761-0900

Of Counsel:
John S. Hahn
JHahn@MayerBrownRowe.com
Jay C. Johnson
JCJohnson@MayerBrownRowe.com

MAYER, BROWN, ROWE & MAW LLP
1909 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, copies of the following document(s):

Citizens Communications Company's Motion for Partial Summary Judgment and Supporting Memorandum of Law

was(were) electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the attorney/parties of record who have registered as CM/ECF participants and;

The undersigned further certifies that on the date shown below, copies of the aforesaid documents were served by electronic mail upon all Service Attorneys listed in Attached Service Listing in accordance with the Second Amended Scheduling Order, dated August 14, 2003.

Dated at Portland, Maine this 24th day of October 2003.

Respectfully submitted,

*/s/ Martha C. Gaythwaite*

Martha C. Gaythwaite
MGaythwaite@FGWL-Law.com
Bruce W. Hepler
BHepler@FGWL-Law.com
Attorneys for Defendant,
Citizen's Communications Company

FRIEDMAN GAYTHWAITE WOLF & LEAVITT
Six City Center, P.O. Box 4726
Portland, ME 04112-4726
(207) 761-0900

T: 2438.001 \ Citizens.Summary Judgment.Motion.10-24-03.doc

## MAILING/SERVICE LISTINGS

As of: October 24, 2003

Re: *City of Bangor v. Citizens Communications Company v. Barrett Paving Materials Inc. et al*
USDC, Maine – Civil Action No. 02-183-B-S

T: 2483.001 \ Mailing-Service Lists.doc

| | PARTY/CONTACT INFORMATION | SERVICE LIST/ADDRESSES |
|---|---|---|
| 1. | City of Bangor<br>Plaintiff<br><br>***William B. Devoe, Esquire***<br>1-947-0111 F: 942-3040<br>*Assigned: 11/22/02*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***P. Andrew Hamilton, Esquire***<br>947-0111<br><br>*Lead Attorney:*<br><br>***W. Scott Laseter, Esquire***<br>McKenna Long & Aldridge LLP<br>303 Peachtree Street NE, Suite 5300<br>Atlanta, GA 30308<br>(404) 527-4000 | ***William B. Devoe, Esquire***<br>Eaton Peabody Bradford & Veague<br>Fleet Center<br>80 Exchange Street<br>P.O. Box 1210<br>Bangor, ME 04402-1210<br><br>***W. Scott Laseter, Esquire***<br>McKenna Long & Aldridge LLP<br>303 Peachtree Street NE, Suite 5300<br>Atlanta, GA 30308 |
| 2. | ~~State of Maine~~<br>~~Party-In-Interest~~<br>***Per Order, Singal, J. – 8/6/03*** | ~~***Dennis Harnish, Esquire***~~<br>~~Assistant Attorney General~~<br>~~Department of the Attorney General~~<br>~~6 State House Station~~<br>~~Augusta, ME 04333-0006~~<br>***Per Order, Singal, J. – 8/6/03*** |

| | | |
|---|---|---|
| 3. | Barrett Paving Materials, Inc.<br>3rd Party Δ<br><br>**John P. McVeigh, Esquire**<br>Preti Flaherty<br>791-3000 F: 791-3111<br>Jmcveigh@preti.com<br>*Assigned: 06/09/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**David B. Van Slyke, Esquire**<br>Preti Flaherty<br>DVanSlyke@preti.com<br>Preti Flaherty Main – 791-3000 | **John P. McVeigh, Esquire**<br>Preti Flaherty Beliveau Pachios & Haley LLC<br>One City Center<br>P.O. Box 9546<br><br>***Portland ME 04112-9546*** |
| 4. | Beazer East Inc.<br>3rd Party Δ<br><br>**Jeffrey A. Thaler, Esquire**<br>774-1200 Fax: 207-774-1127<br>Jthaler@bssn.com<br>*Assigned: 05/30/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* | ***Jeffrey A. Thaler, Esquire***<br>Bernstein Shur Sawyer & Nelson<br>100 Middle Street, West Tower 6th Floor<br>P.O. Box 9729<br>Portland ME 04104-5029 |

| | | |
|---|---|---|
| 5. | CenterPoint Energy Resources Inc.<br>3rd Party Δ<br><br>~~***Robert E. Hirshon, Esquire***~~<br>~~*Assigned: 06/09/03*~~<br>~~*LEAD ATTORNEY*~~<br>~~*ATTORNEY TO BE NOTICED*~~ *Removed per Sherman Esq email 6/23/03*<br><br>***David S. Sherman, Esquire***<br>Drummond Woodsum<br><br>***William L. Plouffe, Esquire***<br><br>*Drummond Woodsum*<br><br>Drummond Woodsum Main - 772-1941<br><br>**Jones Day**<br>77 West Wacker Drive<br>Chicago, Illinois 60601<br>(312) 782-3939 F: (312) 782-8585<br><br>**Charles T. Wehland, Esquire**<br>Jones Day<br>CTWehland@jonesday.com<br>Direct: (312) 269-4388<br>*Assigned: 06/10/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***Laura M. Earl***<br>Jones Day<br>LEarl@jonesday.com<br>Direct: 312.269.4095<br><br>**Albert D. Sturtevant**<br>Jones Day<br>Tel: 312.269.4094<br>Fax: 312.782.8585<br>adsturtevant@jonesday.com<br><br>Jones Day Main – (312) 782-3939 | **David S. Sherman, Esquire**<br>Drummond Woodsum & MacMahon<br>245 Commercial Street<br>P.O. Box 9781<br>Portland ME 04104-5081<br><br>**Charles T. Wehland, Esquire**<br>Jones & Day<br>77 West Wacker Drive, Suite 3500<br>Chicago IL 60601-1692 |

| | | |
|---|---|---|
| 6. | Dead River Company<br>3rd Party Δ<br><br>**Charles A. Harvey, Jr., Esquire**<br>775-1300 F: 775-5639<br>Harvey@HarveyFrank.com<br>*Assigned: 06/09/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>Robert S. Frank, Esquire<br>775-1300 F: 775-5639 Page: 450-3900<br>Frank@HarveyFrank.com | ***Charles A. Harvey, Jr., Esquire***<br>Harvey & Frank<br>Two City Center, 4th Floor<br>P.O. Box 126<br>Portland ME 04112-0126 |
| 7. | Guilford Transportation Industries, Inc.<br>3rd Party Δ<br><br>Maine Central Railroad Company<br>3rd Party •<br><br>***Frederick J. Badger, Jr., Esquire***<br>1-945-5900 F: 1-945-0758<br>fbadger@rwlb.com<br>*Assigned: 06/10/03*<br>*ATTORNEY TO BE NOTICED*<br><br>***Frederick F. Costlow, Esquire***<br>Richardson Whitman Large & Badger<br>One Merchant Plaza, Suite 603<br>P.O. Box 2429<br>Bangor ME 04402-2429<br><br>***Mary F. Kellogg, Esquire***<br>Richardson Whitman Large & Badger<br>One Merchant Plaza, Suite 603<br>P.O. Box 2429<br>Bangor ME 04402-2429<br><br>Richardson Main – 1-945-5900<br><br>**Katherine E. Potter, Esquire**<br>Staff Attorney<br>Guilford Rail System<br>Iron Horse Park<br>No. Billerica, MA 01862<br>Direct line (978) 663-1215 F: (978)663-1213 | ***Frederick J. Badger, Jr., Esquire***<br>Richardson Whitman Large & Badger<br>One Merchant Plaza, Suite 603<br>P.O. Box 2429<br>Bangor ME 04402-2429 |

| | | |
|---|---|---|
| 8. | Maine Central Railroad Company<br>3rd Party •<br><br>See Information for Guilford Transportation Industries Inc. | ***Frederick J. Badger, Jr., Esquire***<br>Richardson Whitman Large & Badger<br>One Merchant Plaza, Suite 603<br>P.O. Box 2429<br><br>***Bangor ME 04402-2429*** |
| 9. | Honeywell International Inc.<br>3rd Party Δ<br><br>***Sean Mahoney, Esquire***<br>Verrill & Dana LLP<br>One Portland Square<br>P.O. Box 586<br>Portland ME 04112-0586<br>774-4000<br>SMahoney@verrilldana.com<br>*Assigned: 07/02/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***Gregory A. Bibler, Esquire***<br>(617) F: (617) 523-1231<br>Gbibler@GoodwinProcter.com<br>*Assigned: 06/05/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***Robert L. Brennan, Esquire***<br>(617) 570-1513 F: (617) 523-1231<br>Rbrennan@GoodwinProcter.com<br><br>**David Himelfarb, Esquire**<br>DHimelfarb@GoodwinProcter.com<br><br>(617) 570-1000 – Main | ***Sean Mahoney, Esquire***<br>Verrill & Dana LLP<br>One Portland Square<br>P.O. Box 586<br><br>*Portland ME 04112-0586*<br><br>***Gregory A. Bibler, Esquire***<br>Goodwin Procter LLP<br>Exchange Place<br>Boston MA 02109 |
| 10. | North American Utilities Construction Corp.<br>3rd Party Δ | |

| | | |
|---|---|---|
| 11. | Northwestern Growth Corporation<br>3rd Party Δ<br><br>***Timothy H. Norton, Esquire***<br>775-1020 F: 773-4895<br>THNorton@krz.com<br><br>~~***Timothy H. Norton, Esquire***~~<br>Advised no longer need be service attorney per email dtd 9/10/03<br><br>***Graydon F. Stevens, Esquire***<br>GStevens@krs.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***Thomas Knapp, Esquire***<br>Tom.Knapp@northwestern.com<br>(202) 508-9561 | **Graydon F. Stevens, Esquire**<br>Kelly Remmel & Zimmerman<br>53 Exchange Street<br>P.O. Box 587<br>Portland ME 04112-0597 |
| 12. | S.E. McMillan Company, Inc.<br>3rd Party Δ<br><br>***Nathaniel M. Rosenblatt, Esquire***<br>1-990-3314 F: 1-941-0239<br>Info@frrlegal.com<br>*Assigned: 06/09/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***Roger L. Huber, Esquire***<br>Farrell Rosenblatt<br><br>Farrell Rosenblatt Main – 1-990-3314 | ***Nathaniel M. Rosenblatt, Esquire***<br>Farrell Rosenblatt & Russell<br>61 Main Street<br>P.O. Box 738<br>Bangor, ME 04402-0738 |

| 13. | UGI Utilities Inc.<br>3rd Party Δ<br><br>**Douglas A. Grauel, Esquire**<br>(603) 606-5021 (direct dial)<br>(603) 647-1900 (fax)<br>DGrauel@nkms.com<br>*Assigned: 06/02/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>***E. Tupper Kinder, Esquire***<br>Nelson Kinder<br>EKinder@nkms.com<br><br>***Bradley D. Holt, Esquire***<br>Nelson Kinder<br><br>Main – (603) 647-1800<br><br>**Jay Varon, Esquire**<br>Foley & Lardner<br>Washington Harbour, Suite 500<br>3000 K Street, N.W.<br>Washington DC 20007-5109<br>(202) 672-5300 F: 672-5399<br>JVaron@foleylaw.com | ***Douglas A. Grauel, Esquire***<br>Nelson, Kinder, Mosseau & Saturley PC<br>99 Middle Street<br>Manchester, NH 03101<br><br>**Jay Varon, Esquire**<br>Foley & Lardner<br>Washington Harbour, Suite 500<br>3000 K Street, N.W.<br>Washington DC 20007-5109 |
|---|---|---|

| | | |
|---|---|---|
| 14. | United States Army Corps of Engineers<br>3rd Party Δ<br><br>***U.S. Department of Justice***<br><br>**<u>Email/Facsimile for courtesy copies</u>**:<br><br>~~**Charles Quinlan, Esquire**~~<br>~~U.S. Department of Justice~~<br>~~(202) 616-4224  F:  (202) 616-4989~~<br>~~Charles.Quinlan@usdoj.gov~~<br>~~*Assigned: 06/16/03*~~<br>~~*LEAD ATTORNEY*~~<br>~~*ATTORNEY TO BE NOTICED*~~<br>~~"Commercial Carrier Overnight Only" Address for courtesy copies~~<br>~~Charles Quinlan~~<br>~~U.S. Department of Justice, Civil Division~~<br>~~1331 Pennsylvania Avenue, N.W., Room 8202 N~~<br>~~Washington DC 20004~~<br>*Deleted per 9/30/03 email.*<br><br>**Stephen E. Crowley, Esquire**<br>U.S. Department of Justice<br>(202) 514-0165  F:  (202) 514-8865<br>Stephen.Crowley@usdoj.gov<br>*Assigned: 06/16/03*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>"Commercial Carrier Overnight Only" Address for courtesy copies<br>Stephen E. Crowley, Esquire<br>USDOJ/ENRD/EDS<br>601 D Street, N.W., Suite 8000<br>Washington DC 2004<br><br>*Added per 9/30/03 email*<br>**Michelle Delemarre, Esquire**<br><br>**John De Yampert, Esquire** | ***Stephen E. Crowley, Esquire***<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>Environmental Defense Section<br>P.O. Box 23986<br>Washington DC 20026-3986 |