# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| CITY OF BANGOR, MAINE, | ) |
|     Plaintiff and Counter-Defendant, | ) ) ) |
| v. | ) ) |
| CITIZENS COMMUNICATIONS COMPANY, | ) ) ) ) |
|     Defendant and Counter-Plaintiff. | ) ) |
| _____ | ) ) |
| CITIZENS COMMUNICATIONS COMPANY, | ) ) ) |
|     Third-Party Plaintiff, | ) ) |
| v. | ) ) |
| BARRETT PAVING MATERIALS, INC., et al., | ) ) ) |
|     Third-Party Defendants. | ) ) |

Civ. Action No. 02-183-B-S

**RESPONSE OF THIRD-PARTY DEFENDANT CENTERPOINT ENERGY RESOURCES CORP. TO CITIZENS COMMUNICATIONS COMPANY'S MOTION FOR SUMMARY JUDGMENT AND JOINDER IN UGI'S LIMITED OPPOSITION**

Third-Party Defendant CenterPoint Energy Resources Corp. respectfully submits this Response to Citizens Communications Company's Motion for Summary Judgment and joins in UGI's Limited Opposition (Doc. # 332). CenterPoint supports Citizens' motion and agrees that the claims by the City of Bangor against Citizens should be summarily dismissed. However, CenterPoint objects to Citizens' allegation that CenterPoint is "liable in equity as owner[] and operator[] of the Gas Works under CERCLA §107(a)(2) and (3)." (Citizens' Brief at p.10; Statement of Facts at ¶ 20.) This allegation is false and immaterial to the determination of Citizens' motion.

CenterPoint supports Citizens' Motion for Summary Judgment. However, Citizens cannot establish that CenterPoint has CERCLA liability as the former parent of the corporate entity that owned and operated the Gas Works. This issue will be determined, if necessary, at a later time in the appropriate proceeding. At this point, CenterPoint respectfully requests that the Court disregard Citizens' conclusion that American Gas and Power Company ("AGPC") "owned and operated" the Gas Works. This argument flouts Supreme Court precedent and is not supportable by the facts of this case. Citizens' conclusion that mere ownership and operation of the Gas Works leads to CERCLA liability in this case also directly contradicts the findings of the Magistrate's Recommended Decision. No party can establish CERCLA liability in this case based solely on allegations of prior ownership or operation of the Gas Works, because the site where the Gas Works was formerly located is not a part of the facility where CERCLA response costs are being expended. (Doc. #291, Recommended Decision at p.16 & n.16.)

I.   **CenterPoint Is Not Liable for the Ownership or Operation of the Gas Works**

CenterPoint is not liable for the ownership and operation of the Gas Works under CERCLA.[1]  The United States Supreme Court in *United States v. Bestfoods* held that a company is not exposed to CERCLA liability merely due to its shareholder interest in a subsidiary company. 524 U.S. 51 (1998). Rather, a parent corporation can only be liable for the actions of

---

[1] The following facts, evident from the pleadings and produced documents in this case, are not material to Citizens' motion but are offered to help clarify the legal arguments presented in this Response:  In 1928, American Gas and Power Company ("AGPC"), a holding company organized in that year for the purpose of purchasing gas utilities, purchased all of the common stock of Bangor Gas Light Company ("BGLC"). At that point in time, BGLC had been an existing Maine corporation in the business of manufacturing and distributing gas for approximately 78 years. In 1941, BGLC changed its name to Bangor Gas Company ("BGC"). AGPC sold all of BGC's common stock to an investment holding company in 1944. Citizens Utilities Company merged BGC into itself in 1948, and changed its name to Citizens Communications Company in 2000. CenterPoint is the corporate successor to AGPC.
   Citizens brief also alleges activities of Public Utilities Management Corporation ("PUMC") during the 1928-44 time frame. (Citizens' Brief at p.10; Statement of Facts at ¶ 20.) CenterPoint is not the successor to PUMC, and therefore this Response does not address Citizens' allegations regarding PUMC. PUMC was dissolved in 1948.  PUMC did not own any common stock of BGC.

a subsidiary company under CERCLA if evidence shows that (1) piercing the corporate veil is justified (indirect liability) or (2) the parent "manag[ed], direct[ed], or conduct[ed] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations" (direct liability). *Id.* at 66-67. The First Circuit Court of Appeals confirmed that direct parent liability under *Bestfoods* requires proof that the parent participated in environmental or waste disposal activities at the subsidiary's facility. *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 102 (1st Cir. 2001). Citizens has no basis for claiming that CenterPoint has CERCLA liability under either *Bestfoods* theory.

**A. Citizens cannot show that BGC was the alter ego of AGPC.**

To prove that CenterPoint is indirectly liable under *Bestfoods*, Citizens must prove that equity warrants piercing the corporate veil of its own predecessor, Bangor Gas Company ("BGC"). Citizens cannot establish indirect liability because it is legally estopped from arguing that BGC was the alter ego of AGPC and because the facts do not show that veil-piercing is warranted.

1. <u>Citizens cannot pierce its own corporate veil.</u>

By seeking to pierce BGC's corporate veil, Citizens effectively argues that its own corporate form should be disregarded. Citizens admits that it merged with BGC in 1948 and that Citizens is BGC's surviving entity. (Doc. #28, Citizens' Answer to Am. Compl. at p.3, ¶¶12, 13.) Citizens and BGC are therefore one and the same corporate entity for legal purposes.

As the present-day equivalent of BGC, Citizens is estopped from arguing that this Court should disregard BGC's corporate form and hold CenterPoint, the former parent of BGC,

indirectly liable for BGC's actions. Because veil-piercing doctrine is equitable in nature, it is only available to third parties, and it may not be used by a subsidiary to pierce its own veil in an attempt to attach liability to the parent corporation. *McCarthy v. Azure*, 22 F.3d 351, 362-63 (1st Cir. 1994), *citing In re Rehabilitation of Centaur Ins. Co.*, 238 Ill. App. 3d 292 (Ill. App. Ct. 1992) (barring a subsidiary from piercing its own corporate veil in order to reach its parent because "the equitable remedy lies with third parties"); *see also Intergen N.V. v. Grina, et al.*, 344 F.3d 134, 149-50 (1st Cir. 2003). "[A] corporation may not pierce its own veil, because to do so would have the effect of denying the corporation its own corporate existence." *Flocco v. State Farm Mut. Aut. Ins. Co.*, 752 A.2d 147, 155 (D.C. 2000) (quotations omitted).

The rule against allowing a corporation to disregard its own corporate form holds true whether Maine or federal veil-piercing law is applied.[2] *Schenley Distillers Corp. v. U.S.*, 326 U.S. 432, 437 (1946) ("[C]orporate entities . . . will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages."); *Alford v. Frontier Enterprises, Inc.*, 599 F.2d 483, 484 (1st Cir. 1979) (applying federal veil-piercing law and holding that a litigant may not "use the corporate form both as shield and sword at his will"); *In re Crowe Rope Indus., LLC*, 307 B.R. 1 (Bankr. D.Me. 2004); *Sturtevant v. Town of Winthrop*, 732 A.2d 264, 270 (Me. 1999) (an entity that "has voluntarily adopted the corporate form to engage in business is precluded from asking courts to disregard that form merely because the [entity] is disadvantaged by its use"); *Bonnar-Vawter, Inc. v. Johnson*, 157 Me. 380, 173 A.2d 141 (1961); 18 Am. Jur. 2d Corporations § 46 (1985) ("Generally, the corporate veil is never

---

[2] *Bestfoods* declined to decide whether state or federal corporate veil-piercing law should be applied in a CERCLA action, 524 U.S. at 63 n.9, and recognized the U.S. District Court of Massachusetts' observation that "the choice between state and federal law may in many cases present questions of academic interest, but little practical significance." *Id.*, *citing In re Acushnet River and New Bedford Harbor Proceedings*, 675 F.Supp. 22, 33 (D.Mass. 1987). Under either application, piercing BGC's corporate veil is not justified in this case.

pierced for the benefit of the corporation or its stockholders . . ..").  Therefore, Citizens is legally estopped from asserting that its own corporate form should be disregarded and the corporate veil between BGC and its former shareholders should be pierced.

        2.      <u>Citizens has admitted that BGC was a legitimate corporation.</u>

Citizens is also estopped from arguing that BGC was AGPC's alter ego because Citizens admitted BGC's legitimacy by contracting and merging with BGC in 1948.  A party who contracts with a corporation admits its corporate existence and is estopped from arguing that the same corporate entity does not exist.  *Close v. Glenwood Cemetery*, 107 U.S. 466, 477 (1882) ("One who deals with a corporation as existing in fact is estopped to deny as against the corporation that it has been legally organized."); *Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.*, 808 F.2d 982, 986 (2nd Cir. 1987) ("One who contracts with or otherwise deals with a body of persons as a corporation thereby admits that they are a corporation . . .."); *Lichtenstein v. Consol. Servs. Group, Inc.*, 978 F. Supp. 1 (D.Me. 1997); *Seven Star Grange No. 73, Patrons of Husbandry v. Ferguson*, 98 Me. 176, 177 (1903); 8 Fletcher Cyclopedia of Private Corp. § 3910 (2001).  Because its merger with BGC constitutes an admission that BGC was a legitimate and separate corporate entity, Citizens may not conversely argue here that BGC was a sham corporation.

        3.      <u>Citizens has no evidence that veil-piercing is warranted.</u>

Even if Citizens were not estopped from making veil-piercing arguments, there is no evidence establishing that equity warrants veil-piercing in this case.  Piercing the veil of a subsidiary corporation to hold a parent liable for the subsidiary's actions is generally impermissible, unless "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf."  *Bestfoods,* 524 U.S. at 62.

The burden of proof is therefore on the party seeking to apply an exception to the general rule against veil-piercing. *Intergen N.V.,* 344 F.3d at 149; 1 Fletcher Cyclopedia of Private Corp. § 41.28 (1999). In this case, Citizens has the burden of proving that piercing BGC's corporate veil is warranted.

Citizens has failed to produce or point to a single document to meet its burden. Citizens cites only to its expert witness designation of George P. Baker. (Citizens' Brief at p.10; Citizens' Statement of Facts at ¶ 21, *citing* Ex. 30.) Setting aside critical defects in this designation and its suitability[3] for purposes of this Response, the opinions expressed in Dr. Baker's expected testimony plainly do not support a finding that AGPC treated BGC as a sham or alter ego. "Common ownership and common management, without more, are insufficient to override corporate separateness and pave the way for alter ego liability." *Intergen N.V.*, 344 F.3d at 149. Consequently, Citizens cannot assign any indirect CERCLA liability for BGC's operation of the Gas Works to CenterPoint, as AGPC's successor.

CenterPoint has produced thousands of documents that will demonstrate, in the appropriate proceeding, that BGC observed corporate formalities, was adequately capitalized, and was not a sham corporation. While these documents are too numerous to cite and attach for purposes of this Response, they show that BGC and AGPC maintained separate minute books, separate properties and accounts, and separate offices in different states; and that although BGC's directors typically also were AGPC officers or directors, the BGC officers and managers

---

[3] Dr. Baker's designation does not contain "a complete statement of all opinions to be expressed and the basis and reasons therefore," as required by the Amended Scheduling Order. (Doc. #200, Am. Sched. Order of Nov. 7, 2003, at p. 3.) Rather, the designation contains only inadmissible legal conclusions, for which Citizens offers no basis and reasons. Moreover, the legal conclusions in Dr. Baker's designation are not admissible summary judgment evidence. *See Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (quotations omitted).

6

involved with day-to-day operations of the Gas Works were not also directors, officers or employees of AGPC. In short, all the evidence in this case points to a permissible parent-subsidiary relationship with the parent corporation exercising the level of management oversight consistent with its financial interests.

> **B.     AGPC did not exercise control over BGC's environmental or waste disposal practices.**

The direct CERCLA liability claim by Citizens against CenterPoint also fails. As mentioned above, Citizens cites only its expert designation of Dr. Baker to support its claim that CenterPoint is "liable in equity as owner[] and operator[] of the Gas Works under CERCLA § 107(a)(2) and (3)." According to the designation, Dr. Baker is expected to testify that AGPC: (1) "made decisions with respect to operations, including plant expansion and management of the physical facilities," (2) "contracted to manage the operations" of the Gas Works, and (3) had the authority to approve or disapprove decisions made by BGC. (Ex. 30 to Citizens' Statement of Facts at p. 5.) Even if these conclusions were true, which CenterPoint denies, they are insufficient to establish direct liability under *Bestfoods* and *Kayser-Roth*. The standard established in those cases is that "an operator must manage, direct, or conduct operations specifically related to pollution." *Bestfoods*, 524 U.S. at 66.

The expert witness designation is silent about operations related to pollution at the Gas Works. The topics in the expert witness designation relate primarily to AGPC and BGC's parent/subsidiary relationship, not to AGPC's actual participation in the operation of the Gas Works. *Bestfoods* expressly rejected the notion that the nature of the parent/subsidiary relationship has any bearing on direct CERCLA liability. *Id.* at 68.

CenterPoint has produced thousands of pages of corporate records and other documents contemporaneous with AGPC's ownership of BGC's common stock. Citizens has not produced a single document in response to CenterPoint's document request, indicating that no other contemporaneous information exists. The produced records and documents do not contain a single reference to involvement by AGPC in the management of waste, wastewater or byproducts generated at the Gas Works.

Citizens' expert witness designation contains no mention of any expected testimony from Dr. Baker to support an allegation that AGPC participated in waste disposal at the Gas Works. Citizens has not produced or identified any documents that would support such findings. Consequently, Citizens cannot show that CenterPoint has direct CERCLA liability.

**II.     Ownership and Operation of the Gas Works Does Not Create CERCLA Liability**

Even if Citizens could show that AGPC owned and operated the Gas Works from 1928-1944, Citizens is wrong in concluding that such a showing proves liability under CERCLA. (Citizens' Brief at p.10.) According to the Recommended Decision, <u>no party</u> is liable based solely on ownership or operation of the Gas Works, because the former location of the Gas Works is not a part of the facility where CERCLA response costs are being expended. (Recommended Decision at p.16 & n.16.) As the Recommended Decision correctly concluded, alleged contamination at the former location of the Gas Works is not at issue in this case, and mere ownership or operation of the MGP Site cannot be the basis of any party's CERCLA liability. (*Id.*)

8

## CONCLUSION

For all the above reasons, CenterPoint respectfully requests that the Court disregard Citizens' assertion that "from 1928 to 1944, American Gas and Power Company and Public Utilities Management Corporation took over operation of the Gas Works and ownership of the Bangor Gas Light Company," and that "[t]he successors of these companies are liable in equity as owners and operators of the Gas Works under CERCLA §107(a)(2) and (3)," but grant Citizens' Motion for Summary Judgment for the other reasons stated therein.

                                                    Respectfully submitted,

Dated: April 27, 2004                  CENTERPOINT ENERGY RESOURCES CORP.

                                                      By: ___/s/ David S. Sherman, Jr._____
                                                            David S. Sherman, Jr.
                                                            Drummond Woodsum & MacMahon
                                                            245 Commercial Street
                                                            P.O. Box 9781
                                                            Portland, Maine 04104-5081
                                                            (207) 772-1941

__/s/ Charles T. Wehland_____
Charles T. Wehland
Laura M. Earl
Albert D. Sturtevant
Jones Day
77 W. Wacker, Suite 3500
Chicago, Illinois 60601-1692
(312) 782-3939

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2004, I electronically filed Response of Third-Party Defendant Centerpoint Energy Resources Corp. to Citizens Communications Company's Motion

9

for Summary Judgment and Joinder in UGI's Limited Opposition with the Clerk of Courts using CM/ECF system which will send notification of such filing(s) to the following:

- **FREDERICK J. BADGER**
  fbadger@rwlb.com kholm@rwlb.com;kmorris@rwlb.com

- **GREGORY A. BIBLER**
  gbibler@goodwinprocter.com

- **ROBERT L. BRENNAN**
  rbrennan@goodwinprocter.com

- **FREDERICK F. COSTLOW**
  fcostlow@rwlb.com

- **STEPHEN E. CROWLEY**
  stephen.crowley@usdoj.gov

- **KEVIN M. CUDDY**
  kmc@cuddylanham.com phiggins@cuddylanham.com

- **JOHN H. DE YAMPERT**
  john.deyampert@usdoj.gov

- **MICHELLE T. DELEMARRE**
  michelle.delemarre@usdoj.gov

- **WILLIAM B. DEVOE**
  wdevoe@eatonpeabody.com vanderson@eatonpeabody.com

- **LAURA M. EARL**
  learl@jonesday.com

- **ROBERT S. FRANK**
  frank@harveyfrank.com lduval@harveyfrank.com;kmd@harveyfrank.com

- **MARTHA C. GAYTHWAITE**
  mgaythwaite@fgwl-law.com aprince@fgwl-law.com;hputterbaugh@fgwl-law.com

- **DOUGLAS A. GRAUEL**
  dgrauel@nkms.com sauger@nkms.com;lcostello@nkms.com

- **JOHN S. HAHN**
  jhahn@mayerbrownrowe.com jcjohnson@mayerbrownrowe.com

- **P. ANDREW HAMILTON**
  ahamilton@eatonpeabody.com

- **CHARLES A. HARVEY**
  harvey@harveyfrank.com
  kmd@harveyfrank.com;sar@harveyfrank.com;pod@harveyfrank.com;lduval@harveyfrank.com

- **BRUCE W. HEPLER**
  bhepler@fgwl-law.com gkent@fgwl-law.com;jblunda@fgwl-law.com

- **ROGER L. HUBER**
  rlh@frrlegal.com

- **JAY C. JOHNSON**
  jcjohnson@mayerbrownrowe.com

- **FRANCIS G. KELLEHER**
  fkelleher@goodwinprocter.com

- **MARY F. KELLOGG**
  mkellogg@rwlb.com

- **W. SCOTT LASETER**
  slaseter@mckennalong.com

- **SEAN MAHONEY**
  smahoney@verrilldana.com

- **JOHN P. MCVEIGH**
  jmcveigh@preti.com aambrose@preti.com

- **TIMOTHY H. NORTON**
  tnorton@krz.com

- **NATHANIEL M. ROSENBLATT**
  nmr@frrlegal.com

- **DAVID S. SHERMAN**
  dshermanecf@dwmlaw.com

- **GRAYDON STEVENS**
  gstevens@krz.com

- **ALBERT D. STURTEVANT**
  adsturtevant@jonesday.com

- **JEFFREY A. THALER**
  jthaler@bssn.com mlibby@bssn.com

- **DAVID B. VAN SLYKE**
  dvanslyke@preti.com

- **JAY VARON**
  jvaron@foleylaw.com

- **CHARLES T. WEHLAND**
  ctwehland@jonesday.com

## Manual Notice List

The following is the list of attorneys who will receive a copy by U.S. Mail/First Class:

```
BRADLEY D. HOLT
NELSON, KINDER, MOSSEAU & SATURLEY, P.C.
99 MIDDLE STREET
MANCHESTER, NH 03101

E. TUPPER KINDER
NELSON, KINDER, MOSSEAU & SATURLEY, P.C.
99 MIDDLE STREET
MANCHESTER, NH 03101

JULIE ANNA POTTS
MAYER, BROWN, ROWE & MAW
1909 K STREET, N.W.
WASHINGTON, DC 20006-1101
```

/s/ David S. Sherman
Attorney for Third-Party Defendant
Centerpoint Energy Resources Corp.

CHI-1412534v3